**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                   )
JUDITH A. BEALL,                   )
                                   )
            Plaintiff,             )
        v.                         )
                                   )
EDWARDS LIFESCIENCES LLC,          )  Civil Action No. 17-822 (EGS)
                                   )
                                   )
            Defendant.             )
_____   )

## MEMORANDUM OPINION AND ORDER

### I. Introduction

   Plaintiff Judith Beall ("Ms. Beall") brings this action against her employer, defendant Edwards Lifesciences LLC ("Edwards"). She alleges that Edwards discriminated against her on the basis of gender and age by utilizing discriminatory pay practices in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401, _et seq._, and the Federal Equal Pay Act, 29 U.S.C. § 206. Ms. Beall also alleges that Edwards retaliated against her for protesting the company's pay policy in violation of the DCHRA. Finally, Ms. Beall alleges that Edwards failed to pay her wages for disability and vacation leave in violation of the District of Columbia ("D.C.") Wage Payment Act, D.C. Code § 32-1302.

   Pending before the Court is Edwards' motion to transfer the case to the United States District Court for the Central

District of California ("Central District of California"), where its headquarters is located. Upon consideration of the motion to transfer, the response and reply thereto, the applicable law, and the record, the motion shall be **GRANTED** and this proceeding shall be **TRANSFERRED** to the Central District of California.

## II. Background

Edwards is a corporation formed under Delaware law and headquartered in Irvine, California. Compl., ECF No. 1 ¶ 8. It delivers medical products for structural heart disease, critical care, and surgical monitoring. *Id.* ¶ 12. It conducts this business through medical sales representatives, who are assigned to specific specialty teams and geographic sales areas. *Id.* Ms. Beall, a D.C. resident, has been employed with Edwards as a "vascular sales" representative since 1999. *Id.* ¶¶ 7, 14-16.

In 2002, she signed an employment agreement with Edwards. Employment Agreement ("EA"), ECF No. 8-2. The employment agreement governs certain aspects of Ms. Beall's "employment relationship" with the company. *Id.* ¶ 1. Specifically, it states that Ms. Beall is an "at-will" employee and that Edwards "may change [her] hours, wages, benefits, position, working conditions, and other terms of employment . . . ." *Id.* ¶ 1.12. The employment agreement also mandates that "any action to enforce the terms of this Agreement shall be brought within the courts of the State of California." *Id.* ¶ 9.

In 2016, Ms. Beall was the vascular sales representative assigned to the East region, which is comprised of thirty-five Eastern states. Compl., ECF No. 1 ¶ 21. Another sales representative, Mr. Shawn Asuncion, was assigned to the West region, which is comprised of fifteen Western states. *Id.* That year, allegedly in an effort to "equalize" Mr. Asuncion's pay, Edwards issued a compensation plan for the vascular sales team. *Id.* ¶¶ 21, 23. The plan included a "Commissions Payout Matrix," which detailed Ms. Beall's and Mr. Asuncion's respective commission scales. *Id.* ¶ 21. According to Ms. Beall, Mr. Asuncion receives 2.5 to 8.6 times more commission for every sales dollar than she does under this Matrix. *Id.* Accordingly, Ms. Beall objected to the new compensation plan and refused to sign it. *Id.* ¶¶ 23, 25. Shortly thereafter, Ms. Beall "engaged counsel to represent her with respect to the pay discrimination issue." *Id.* ¶ 26. In May 2016, her counsel sent her supervisor, Mr. D. Casey Newhouse, a letter detailing her complaints; the dispute was "never resolved." *Id.*

Ms. Beall's relationship with Edwards began deteriorating after her counsel sent the letter. *Id.* ¶¶ 27-30. Mr. Newhouse purportedly "routine[ly] . . . harangue[d]" Ms. Beall and overly scrutinized her work. *Id.* ¶ 30. The company also allegedly retaliated against her as a result of her objections. For example, in October 2016, Ms. Beall injured her foot and

Edwards allegedly placed her on medical leave. Ms. Beall believed the leave was unnecessary because she was adequately performing her work despite the injury. *Id.* ¶ 35. As a result, Ms. Beall argues that she has not been paid for 200 hours of medical leave time. *Id.* ¶ 37. Ms. Beall also alleges that she was precluded from taking available vacation leave during the 2016 holiday season, despite the season being "typically very slow" for medical sales representatives. *Id.* ¶ 40. Ms. Beall was purportedly told that she would be compensated for her unused holiday time, but this "never occurred." *Id.* ¶ 42.

## III. Analysis

Edwards argues that Ms. Beall's case should be transferred to the Central District of California for two reasons. First, they argue that the forum selection clause in her employment agreement requires adjudication in California. *See* Def.'s Mot., ECF No. 8.[1] Alternatively, Edwards argues that transfer is warranted in the interest of justice for the convenience of the parties and their witnesses. *See id.* Ms. Beall responds that her suit falls outside the employment agreement's scope and thus, the forum selection clause is irrelevant. *See* Pl.'s Opp'n, ECF

---

[1] When citing electronic filings throughout this opinion, the Court cites to the ECF page number, not the page number of the filed document.

No. 9. She also argues that her choice of forum outweighs Edwards' interest in litigating in California. *See id.*

**A. The Forum Selection Clause is Inapplicable**

Edwards argues that Ms. Beall's case must be transferred because the employment agreement requires that Ms. Beall bring "any action to enforce the terms of the Agreement" in California. Def.'s Mot., ECF No. 8 at 8-9 (discussing EA, ECF No. 8-2 ¶ 9); *see also* Def.'s Supp. Mot., ECF No. 14. Edwards argues that Ms. Beall's claims fall within the scope of the employment agreement because they "relate" to her "employment relationship" with the company and because the employment agreement specifically governs claims regarding Ms. Beall's "hours, wages, benefits, position, working conditions, and other terms of employment." Def.'s Supp. Mot, ECF No. 14 at 2-3.

Ms. Beall argues that the employment agreement is inapplicable because she is not suing to "enforce" the terms of the agreement. Pl.'s Opp'n, ECF No. 9 at 2-3; Pl.'s Supp. Mot., ECF No. 17 at 3. Instead, she seeks to enforce her rights under federal and D.C. law by challenging the company's discriminatory policies and retaliatory decisions. *Id.* Moreover, Ms. Beall argues that the employment agreement was "the entire and final agreement between employee and Edwards concerning the subject matter of this Agreement." Pl.'s Supp. Mot., ECF No. 17 at 2 (quoting EA, ECF No. 8-2 ¶ 10). Therefore, even if the

employment agreement does govern issues concerning her wages and working conditions, the forum clause is not implicated because the allegedly discriminatory compensation plan was not incorporated into the agreement. *Id.*

A valid forum selection clause between the parties carries "significant weight" when considering a motion to transfer. *Worldwide Network Servs. v. DynCorp Int'l*, 496 F. Supp. 2d 59, 62 (D.D.C. 2007). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause" and "[o]nly under extraordinary circumstances unrelated to the convenience of the parties" should such a motion be denied. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). Ms. Beall does not dispute that the forum selection clause in the parties' employment agreement is "valid." *See, e.g.*, Pl.'s Opp'n, ECF No. 9.

To determine whether Ms. Beall's claims fall within the scope of the forum selection clause, the Court must "'examine the substance of [the] claims shorn of their labels,' and 'focus on factual allegations rather than on the causes of action asserted.'" *Cheney v. IPD Analytics*, 583 F. Supp. 2d 108, 122 (D.D.C. 2008)(quoting *Phillips v. Audio Active, Ltd.,* 494 F.3d 378, 388 (2d Cir. 2007)). As a result, forum selection clauses "have been found to encompass even non-contractual causes of

6

actions." *Worldwide Network Servs.*, 496 F. Supp. 2d at 63.

Turning to the text applicable here, Ms. Beall agreed to bring "any action to *enforce* the terms of this [Employment] Agreement" in California. EA, ECF No. 8-2 ¶ 9 (emphasis added). Plainly, this forum selection clause only covers actions to enforce the employment agreement and not, as Edwards argues, any action related to Ms. Beall's broader employment relationship with the company. *See* Def.'s Supp. Mot., ECF No. 14 at 2-3. True, some aspects of Ms. Beall's employment relationship are implicated by the employment agreement. For example, by signing the employment agreement Ms. Beall agreed that Edwards may change her hours, wages, benefits, etc. EA, ECF No. 8-2 ¶ 1.2. And while Ms. Beall's claims do concern her working conditions and wages, she is not seeking to enforce the employment agreement. Instead, she alleges that her pay and working conditions are discriminatory and retaliatory in violation of federal and local law. *See generally* Compl., ECF No. 1.

Had the forum selection clause contained broader language requiring that any dispute "related to" or "arising out of" the employment agreement be brought in California, for example, Edwards' argument may be more persuasive. *Compare with Cheney*, 583 F. Supp. 2d at 124 (finding that the plaintiff's tort claims "arise out of" the employment agreement because they turn on the parties' contractual relationship); *Worldwide Network Servs.*,

496 F. Supp. 2d at 63 (finding that the basis for the plaintiff's statutory and tortious claims "arises from the contractual relationship between the parties"). Based on the language of the clause, however, the Court cannot conclude that Ms. Beall's discrimination and retaliation claims fall within the ambit of the forum selection clause. *See Kwiecinski v. Medi-Tech Int'l Corp.*, No. 3:14-CV-01512-BR, 2015 WL 3905224, at *5 (D. Or. June 25, 2015) (concluding that a narrowly-written forum selection clause applying only to "disputes pursuant to the contract" did not encompass the plaintiff's compensation claim).

Edwards relies on *Johnson v. Copiers Northwest, Inc.*, in which an employee's claims for unpaid wages were found to fall within the scope of a similarly-worded forum selection clause. Def.'s Supp. Mot., ECF No. 14 at 3-5 (discussing No. 16-cv-1556, 2017 WL 1968605 (D. Or. May 12, 2017)). However, in that case the plaintiff's claim was based on a compensation plan that was attached to the employment agreement that contained the forum selection clause. 2017 WL 1968605 at *4. Thus, the plaintiff was indeed bringing an action to "enforce[] [the] Employment Agreement." *Id.* This is not the case here. Ms. Beall is not suing to enforce a contractual provision found within the employment agreement. Instead, she is challenging the 2016 compensation plan, which was neither attached nor incorporated into the 2002 employment agreement. Pl.'s Supp. Mot., ECF No. 17

8

at 3-5; EA, ECF No. 8-2 ¶ 10 ("this Agreement constitutes the entire and final agreement . . . concerning the subject matter"). Therefore, her claims do not fall within the forum selection clause's scope.

### 1. Ms. Beall's Motion for Sanctions is Denied

In complying with the Court's Order[2] for supplemental briefing regarding the forum selection clause, Ms. Beall also moved for sanctions. Pl.'s Supp. Mot., ECF No. 17 at 6-7 (refiled in identical form as Pl.'s Mot. for Attorney Fees, ECF No. 20). Ms. Beall avers that she is entitled to attorneys' fees because Edwards' argument—that the forum selection clause is applicable— is "sanctionable," "improper[,] and frivolous." *Id.* To the contrary, the Court ordered additional briefing on this topic because it was central to the dispute and not sufficiently briefed by either party. Had Edwards' argument been "frivolous," the Court certainly would not have ordered supplemental briefing.

### B. Transfer is Warranted Pursuant to 28 U.S.C. § 1404(a)

Notwithstanding the Court's finding that the forum selection clause is inapplicable, transfer to the Central District of

---

[2] The Order "direct[ed] parties to file supplemental briefing. Specifically, parties [were] ordered to submit memoranda of law addressing whether the forum selection clause is applicable in Ms. Beall's case. Stated differently, parties should address whether Ms. Beall's complaint is 'an action to enforce the terms of [her Employment Agreement].'" November 17, 2017 Minute Order.

California is appropriate. Edwards argues that convenience and
the interest of justice weighs in favor of transfer because
"virtually all" of the relevant records, documents, and
witnesses are located in California. Def.'s Mot., ECF No. 8 at
8-11. Ms. Beall argues that transfer is not appropriate,
especially in view of the "stark imbalance" of each party's
relative resources. Pl.'s Opp'n, ECF No. 9 at 3-7.

28 U.S.C. § 1404(a) authorizes a court to transfer an action
to any other district where it might have been brought "for the
convenience of the parties and witnesses, in the interest of
justice."

As stated by this Court:

> [T]he district court has discretion to
> transfer a case based on an "'individualized
> case-by-case consideration of convenience and
> fairness.'" *Stewart Org., Inc. v. Ricoh
> Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van
> Dusen v. Barrack*, 376 U.S. 612, 622 (1964));
> *see also Demery v. Montgomery County*, 602 F.
> Supp. 2d 206, 210 (D.D.C. 2009) ("Because it
> is perhaps impossible to develop any fixed
> general rules on when cases should be
> transferred[,] . . . the proper technique to
> be employed is a factually analytical, case-
> by-case determination of convenience and
> fairness.") (internal quotation marks
> omitted). The moving party bears the burden
> of establishing that transfer of the action is
> proper. *Devaughn v. Inphonic, Inc.*, 403 F.
> Supp. 2d 68, 71 (D.D.C. 2005); *see also SEC v.
> Savoy Indus., Inc.*, 587 F.2d 1149, 1154 (D.C.
> Cir. 1978) (noting that the district court's
> denial of a motion to transfer "was
> effectively a ruling that [the appellant] had

failed to shoulder his burden").

> In order to justify a transfer, defendants must make two showings. First, they must establish that the plaintiff could have brought suit in the proposed transferee district. *Devaughn*, 403 F. Supp. 2d at 71–72; *Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). Second, defendants must demonstrate that considerations of convenience and the interests of justice weigh in favor of a transfer. *Devaughn*, 403 F. Supp. 2d at 72; *Trout Unlimited*, 944 F. Supp. at 16.

*Berry v. U.S. Dep't of Justice*, 49 F. Supp. 3d 71, 74–75 (D.D.C. 2014).

To determine whether "considerations of convenience and the interests of justice weigh in favor of a transfer," the Court considers several private-interest factors including: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Id*. at 75 (citations omitted). Finally, the Court considers whether certain public-interest factors weigh in favor of transfer, including "(1) the transferee's familiarity with the governing laws, (2) the relative congestion of each court, and (3) the local interest in deciding local controversies at home." *Id*. at

77 (quoting *Montgomery v. STG Int'l, Inc.,* 532 F. Supp. 2d 29, 34 (D.D.C. 2008))(additional citations omitted).

## 1. The Central District of California is an Appropriate Venue

Pursuant to 28 U.S.C. § 1391(b), a lawsuit "may be brought in" a judicial district: (1) where "any defendant resides, if all defendants are residents of the State in which the district is located"; (2) where "a substantial part of the events or omissions giving rise to the claim occurred"; or (3) if there is no judicial district where the case may be brought as provided by the first two categories, where "any defendant is subject to the court's personal jurisdiction." "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)." *Atl. Marine Const. Co.,* 571 U.S. at 56.

It is undisputed[3] that Ms. Beall could have brought her claims in the Central District of California. *See* Def.'s Mot., ECF No.

_____

[3] Ms. Beall does not dispute that she could have brought her claim in the Central District of California. However, in arguing that it is an otherwise inconvenient forum, she suggests that the Central District lacks personal jurisdiction over her. Pl.'s Opp'n, ECF No. 9 at 4-5. Whether or not Ms. Beall is subject to personal jurisdiction in the Central District of California is immaterial to the § 1404(a) inquiry. *See Mykey Tech., Inc. v. Intelligent Computer Sols.,* Civ. No. JFM-12-2719, 2012 WL 6698654 at *1 n.1 (D. Md. Dec. 21, 2012)(citing *F.T.C. v. Watson Pharm., Inc.,* 612 F. Supp. 2d 1081, 1090 (C.D. Cal. 2009)); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure,* § 3845 (3d ed. 2007)).

8 at 7; Pl.'s Opp'n, ECF No. 9 (not arguing that venue is improper under § 1391(b)). The Court agrees that the Central District of California is an appropriate venue because Edwards "resides" there. *See* 28 U.S.C. § 1391(b)(1). Its headquarters is located in Irvine, California. *See* Compl., ECF No. 1 ¶ 8.

## 2. Considerations of Convenience and the Interests of Justice Weigh in Favor of Transfer

### a. Plaintiff's Choice of Forum

"Absent specific facts that would cause a district court to question plaintiffs' choice of forum, plaintiffs' choice is afforded substantial deference." *Wilderness Soc'y v. Babbitt,* 104 F. Supp. 2d 10, 12 (D.D.C. 2000)(citations omitted). This is especially true when, as here, the plaintiff is a resident of the forum. *See Pyrocap Int'l Corp. v. Ford*, 259 F. Supp. 2d 92, 95 (D.D.C. 2003). Ms. Beall resides and works in D.C. and chose to bring her claim here. Compl., ECF No. 1 ¶ 13.

However, the deference accorded to Ms. Beall's choice is "weakened" because "most of the relevant events" giving rise to her claims "occurred elsewhere." *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009)(citations and quotations omitted). While Ms. Beall alleged that her injury occurred in D.C., Pl.'s Opp'n, ECF No. 9 at 3, the gravamen of her complaint concerns Edwards' discriminatory and retaliatory decisions, which were made in California, *see* Compl., ECF No. 1 ¶ 21 ("Edwards issued

its compensation plan"), ¶ 35 ("Ms. Beall was placed on medical leave"), ¶ 36 (recounting a conversation with Human Resources), ¶ 37 ("Ms. Beall has not been paid"), ¶ 40 ("Ms. Beall was precluded from taking available vacation leave"). Therefore, the deference usually given to the plaintiff's choice of forum is somewhat diminished, and this factor weighs only slightly against granting Edwards' motion to transfer. *See Pyrocap*, 259 F. Supp. 2d at 96 (finding that the plaintiff's choice of forum was diminished because the "gravamen of this case involve[d] defendants' alleged knowledge and conduct" outside of the District).

### b. Defendant's Choice of Forum

A defendant's choice of forum is a consideration when deciding a transfer motion, but it is not ordinarily entitled to deference. *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 32 (D.D.C. 2013) (citations omitted). "[W]here Defendants move to transfer over Plaintiff's opposition, they must establish that the added convenience and justice of litigating in their chosen forum overcomes the deference ordinarily given to Plaintiff's choice." *Id.* As discussed in further detail below, Edwards has done so here by establishing that transfer to the Central District of California will "lead to increased convenience overall." *Mazzarino v. Prudential Ins. Co. of Am.*, 955 F. Supp. 2d 24, 31 (D.D.C. 2013). Moreover, Edwards has a substantial

14

connection to its chosen forum in California. Its headquarters
is located there, the allegedly discriminatory policies were
made there, and retaliatory actions were taken there. Def.'s
Mot., ECF No. 8 at 3-5. Therefore, Edwards' choice of forum is
entitled to some weight.

### c. Whether the Claim Arose Elsewhere

"Courts in this district have held that claims 'arise'
under 28 U.S.C. § 1404(a) in the location where the corporate
decisions underlying those claims were made or where most of the
significant events giving rise to the claims occurred." *Treppel
v. Reason*, 793 F. Supp. 2d 429, 436-37 (D.D.C. 2011) (citations
omitted). The California forum urged by the defendants is the
locus of substantially more events underlying Ms. Beall's claims
than is D.C. Notably, Ms. Beall does not address this factor;
instead, she relies on the deference that her choice is owed and
the relative resource imbalance between the parties. Pl.'s
Opp'n, ECF No. 9 at 3-5 (arguing she has the "right to bring her
claim in the district she lives, works, and was injured in.")

Presumably Ms. Beall was injured in D.C. because she learned
about Edwards' retaliatory actions at home—including its
decisions to: place her on medical leave, deny her request for
vacation, and refuse to pay her for unused vacation time and
medical time. *See, e.g.*, Compl., ECF No. 1 ¶ 36. However, these
actions were made at corporate headquarters. *See* Def.'s Mot.,

15

ECF No. 8 at 3-5. Moreover, Edwards developed its allegedly discriminatory compensation plan at its headquarters. *Id.* Therefore, this factor weighs in favor of transfer. *See Aftab*, 597 F. Supp. 2d at 82-83 (citing *Barham v. UBS Fin. Servs.,* 496 F. Supp. 2d 174, 179 (D.D.C. 2007) (noting that even though some management decisions may have been made in D.C., the defendants' discriminatory actions occurred in the Maryland office and therefore the plaintiff's forum was afforded less deference)); *see also Winmar Constr., Inc. v. JK Moving & Storage, Inc.*, Civ. No. 17-cv-2164, 2018 WL 1183738 at *3 (D.D.C. Mar. 7, 2018) (granting the motion to transfer in part because "most of the significant events giving rise to the claim occurred" in the transferee forum).

### d. The Convenience of the Parties and the Convenience of Witnesses

"The most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses." *Pyrocap*, 295 F. Supp. 2d at 97 (quoting *Chung v. Chrysler Corp.,* 903 F. Supp. 160, 164 (D.D.C. 1995)). Edwards argues that almost all of the key witnesses are located in the Central District of California. Def.'s Mot., ECF No. 8 at 3-5, 9-11. It identifies nine Edwards' employees, all of whom may testify regarding Ms. Beall's job responsibilities, pay, and her interactions with Mr. Newhouse. *Id.* All but one of these employees live in California and all

but two work at Edwards' headquarters in Irvine. *Id.* These

witnesses include: (1) human resources employees who took part

in the allegedly retaliatory vacation and medical leave

decisions and with whom Ms. Beall raised her discrimination

concerns; (2) sales strategy analysts and managers, who crafted

Edwards' allegedly discriminatory compensation plan; (3) Mr.

Newhouse, Ms. Beall's supervisor who is alleged to have

retaliated and discriminated against her; and (4) Mr. Asuncion,

Ms. Beall's younger, male coworker who allegedly receives more

commission than she does for the same work. *Id.*; Sullivan Decl.,

ECF No. 8-5 ¶¶ 4-6. According to Edwards, the only witness

located in this District is Ms. Beall. Def.'s Mot., ECF No. 8 at

5, 10.

Ms. Beall responds that she is the "most material witness" and

is located in D.C. Pl.'s Opp'n, ECF No. 9 at 5. She also argues

that most of Edwards' identified witnesses are merely "secondary

and tertiary witnesses." *Id.* at 6. The Court disagrees. Ms.

Beall's discrimination and retaliation claims concern company-

wide policies and corporate decisions. *See generally* Compl., ECF

No. 1. The witnesses identified by Edwards are expected to

testify regarding these very policies and decisions. *See* Def.'s

Mot., ECF No. 8 at 3-5. Indeed, "[c]ourts have consistently

transferred actions when the majority of witnesses live near the

transferee forum." *Mathis v. Geo Grp., Inc.*, 535 F. Supp. 2d 83, 87 (D.D.C. 2008) (citations and quotations omitted).

Because the Edwards employees' testimony is not "tangential to the central issues of this case, and [given] the preference for live testimony from witnesses with personal knowledge whose credibility could be at issue, the Court finds that, as far as the convenience of witnesses is concerned, the balance of interests weighs in favor of transfer." *Pyrocap*, 259 F. Supp. 2d at 98 (citing *Claasen v. Brown,* 15 A.D.D. 443, 1996 WL 79490 at *6 (D.D.C. 1996) ("Live testimony is always markedly preferable . . . particularly where the resolution of critical factual issues will likely turn on the credibility of witnesses."))

### e. Ease of Access to Sources of Proof

Edwards argues that "virtually all" of the records and documents relating to Ms. Beall's employment are stored at Edwards' headquarters in the Central District of California. Def.'s Mot., ECF No. 8 at 9-10. This includes her employment agreement, personnel file, payroll records, and performance reviews. *Id.* at 10. Ms. Beall argues that this factor does not weigh in favor of transfer because the documents are in easily transferrable digital form. Pl.'s Opp'n, ECF No. 9 at 6. While the records may be in electronic form, this factor weighs nonetheless in favor of transfer because "all of the . . .

18

documents" are located in the transferee forum. *Brown v.*
*Suntrust Banks, Inc.*, 66 F. Supp. 3d 81, 85 (D.D.C. 2014).

### f. The Transferee's Familiarity with the Governing Laws

Because all federal courts are presumed to be equally familiar
with the law governing statutory claims, neither forum is
favored for adjudicating Ms. Beall's Federal Equal Pay Act
claim. *Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d
97, 103 (D.D.C. 2009). However, in addition to her federal
claim, Ms. Beall brings two claims under the DCHRA, *see* Compl.,
ECF No. 1 ¶¶ 46-54, 62-69, and the D.C. Wage Payment Law, *see*
*id.* ¶¶ 70-77. A court in D.C. "may be more familiar with the law
governing [Ms. Beall's] DCHRA [and D.C. Wage Payment Act]
claim[s]." *Miller*, 608 F. Supp. 2d at 103 (citing *Trout
Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C.
1996); *Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 324
(D.D.C. 1991)). Therefore, as Edwards acknowledges, "this factor
tilts slightly toward venue in this district." *Id.; see* Def.'s
Mot., ECF No. 8 at 12-13.

### g. The Relative Congestion of Each Court

Edwards argues that this factor weighs in favor of transfer
because the Central District of California's docket is less
congested. Def.'s Mot, ECF No. 8 at 11-12. Ms. Beall argues that
this District's familiarity with D.C. law will increase

19

efficiency, overcoming Edwards' arguments regarding docket
congestion. Pl.'s Opp'n, ECF No. 9 at 7.

"The relative docket congestion and potential speed of
resolution with respect to both the transferor and transferee
courts are appropriate to consider." *Trout Unlimited*, 944 F.
Supp. at 19 (citing *SEC v. Savoy Indus., Inc.,* 587 F.2d 1149,
1156 (D.C. Cir. 1978)). As in *Trout Unlimited*, it is not evident
that a transfer to the Central District of California will lead
to unnecessary delay. *Id.* Because this Court has not dealt or
familiarized itself with the underlying merits of the case and
because the case is in its earliest stages, "there would be no
delay associated with the [California] district court's having
to familiarize itself with this case." *Id.* (citation omitted).
This factor therefore weighs in favor of transfer.

### h. The Local Interest in Deciding Local Controversies at Home

Although both jurisdictions may have an interest in resolving
Ms. Beall's claims, courts in this Circuit "have looked at where
a clear majority of the operative events took place in order to
determine where a case should be adjudicated." *Treppel v.
Reason*, 793 F. Supp. 2d 429, 439–40 (D.D.C. 2011) (quoting *Trout
Unlimited*, 944 F. Supp. at 19). Indeed, "controversies should be
resolved in the locale where they arise." *Trout Unlimited*, 944
F. Supp. at 19. As previously discussed, the majority of the
decisions underlying Ms. Beall's claims were made at Edwards'

headquarters in Irvine, California. Therefore, this factor weighs in favor of transfer.

## IV.  Conclusion and Order

Having considered all of the relevant factors, the Court concludes that Edwards made the necessary showing that "considerations of convenience and justice weigh in favor transfer." *Berry*, 49 F. Supp. 3d at 75. It is therefore

**ORDERED** that Edwards' motion to transfer is **GRANTED;** and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1404(a), the Clerk's Office is directed to **TRANSFER** this case to the United States District Court for the Central District of California; and it is further

**ORDERED** that Ms. Beall's motion for attorneys' fees is **DENIED.**

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **April 26, 2018**